Filed 6/28/22  Therolf v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| GARRETT THEROLF, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF MADERA COUNTY, <br><br> Respondent; <br><br> MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES/CHILD WELFARE SERVICES, <br><br> Real Party in Interest. | F082993 <br><br> (Super. Ct. Nos. MJP018547 & MJP018664) <br><br><br> **OPINION** |

-ooOoo-

ORIGINAL PROCEEDINGS; in mandate.  Thomas L. Bender, Judge.

Munger, Tolles & Olson, Jordan D. Segall and Lloyd S. Marshall;  University of California at Irvine School of Law, Susan E. Seager and Jack Lerner for Petitioner.

No appearance for Respondent.

Regina A. Garza, County Counsel, and Christopher B. Dorian, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

**SEE CONCURRING OPINION**

Under Welfare and Institutions Code section 827, subdivision (a)(2)[1] (hereafter section 827(a)(2) or § 827(a)(2)), the juvenile court is required to release to the public the "juvenile case files … that pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300" unless the juvenile court finds by a preponderance of the evidence that release of the files would be detrimental to "another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827(a)(2)(A).) To obtain a deceased child's juvenile case files, a petition must be filed and interested parties afforded an opportunity to file objections. (*Ibid.*) If objections are filed, the juvenile court "shall set the matter for hearing" and thereafter "render its decision." (§ 827(a)(2)(F).)

Petitioner Garrett Therolf, a journalist, petitioned to obtain records of two deceased children, siblings T.S. and D.S. (collectively the children), whose parents have been charged with T.S.'s murder. Although the Madera County Department of Social Services/Child Welfare Services (department) filed objections to the disclosure of the children's juvenile case files, the juvenile court denied Therolf's petitions without a hearing.

Therolf contends the juvenile court committed several errors in ruling on his petitions when it: (1) failed to hold a hearing; (2) considered impermissible factors when deciding whether to release the children's records; (3) found D.S. had no juvenile case file because a dependency petition had not been filed on her behalf; and (4) failed to make factual findings to support its denial of his requests. Therolf seeks a writ of mandate or prohibition, or other appropriate relief, to compel the juvenile court to vacate its orders denying the petitions and to either enter an order granting the petitions, or remand for a hearing under the proper standards.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

We agree the juvenile court erred when it failed to hold a hearing on Therolf's petitions and considered impermissible factors in denying them. We reject the department's contention that the children were not within the juvenile court's jurisdiction when they died and affirm the decision in *In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1538–1539, 1556 (*Elijah S.*), which held the juvenile court has exclusive authority to order release of a deceased child's juvenile records regardless of whether a dependency petition has been filed and a prior jurisdictional finding has been made. The juvenile court prejudicially erred when it failed to require the department to produce the full scope of documents as set forth in *Elijah S.* We also reject Therolf's contention that, contrary to our decision in *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 831–834 (*Pack*), the juvenile court was required to make specific factual findings when making a detriment finding. But we find the juvenile court's failure to comply with the other procedures set forth in *Pack* concerning in camera review of the records and preserving those records for appellate review, also was prejudicial. We conclude the failure to hold a hearing was prejudicial, especially in light of the juvenile court's failure to comply with *Elijah S.* and the *Pack* procedures, as we were deprived of an adequate record to review the juvenile court's orders.

Accordingly, we grant the petition for writ of mandate and direct the juvenile court to vacate its orders, hold a hearing on Therolf's petitions after ordering the department to produce T.S.'s and D.S's juvenile case files in accordance with *Elijah S.*, review the responsive documents in camera, and reconsider the petitions applying the appropriate standards.

## FACTUAL AND PROCEDURAL BACKGROUND

Four-month-old D.S. died on August 16, 2015, in Madera while in her parents' custody, which led the department to file juvenile dependency petitions with respect to

her siblings.[2]  Nearly five years later, on July 15, 2020, her two-year-old brother, T.S. was reported missing; his burned corpse was found eight days later in a field outside Madera.  Thereafter, the department filed a mandatory report with the California Health and Human Services Agency regarding T.S.'s death, which stated law enforcement and the department investigated the death and the department determined the boy died of abuse and neglect while in his parents' care.  T.S.'s surviving siblings later became dependents of the juvenile court.[3]

On January 13, 2021, journalist Garrett Therolf filed two separate requests for disclosure of each child's juvenile case file using mandatory Judicial Council form JV-570.[4, 5]  On the forms, Therolf checked the box that stated he believed each child "died as a result of abuse or neglect."  Therolf stated the reason for the requests was "[n]ews reporting," and he needed the records "[t]o report on the child's involvement with child protective services."

Therolf requested the complete juvenile case file of each child and referred to an attachment to the petitions.  In the attachment, Therolf, who was seeking the juvenile case files pursuant to section 827(a)(2), asserted the case files included both juvenile

---

[2]  The department asserts in its return that D.S. died before any intervention by child welfare services and no dependency proceedings were ever commenced as to her, although her siblings were detained.

[3]  The department asserts in its return that while a dependency petition was filed naming T.S., he was named as a precautionary measure pending confirmation of his death by the Madera County Sheriff/Coroner and no jurisdictional finding was ever rendered in his case.

[4]  In his writ petition, Therolf states he is a journalist associated with the Investigative Reporting Program at the University of California, Berkeley, where he reports on issues related to California's child welfare system, and over the past 15 years he has filed over 40 requests to unseal the juvenile case files of deceased children pursuant to section 827(a)(2), all of which were granted.  Therolf asserts he filed the instant requests "as part of his ongoing effort to promote public scrutiny and informed debate regarding the circumstances surrounding the deaths of D.S. and T.S., and to promote reform to prevent future child deaths by abuse and neglect."

[5]  Further reference to forms are to Judicial Council forms.

4.

court records and documents outside the court file, as well as "'agency files where no juvenile court proceedings ha[d] been instituted and the matter [was] handled informally,'" citing *Elijah S., supra*, 125 Cal.App.4th at page 1552. Therolf requested disclosure of 12 categories of documents, which he stated were the types of documents he received as part of juvenile case files provided to him in response to several successful JV-570 petitions he previously filed.[6]

The department filed objections to both requests on January 27, 2021. With respect to D.S., the department asserted while dependency cases were commenced with respect to her siblings after her death, she was never a dependent herself and no dependency case existed for her. To the extent there were any juvenile court or department records pertaining to D.S., they would have been "generated in relation to her siblings."

Both objections asserted release of the records could jeopardize the ongoing law enforcement investigation into T.S.'s death and would violate section 10850.4, subdivisions (c), (d) and (e)(1)(B), and any records on T.S. would include extensive information on his surviving siblings who were under juvenile court jurisdiction. The

---

**6**      The requested documents are: (1) the California Law Enforcement Telecommunication System (CLETS) history for the family; (2) the Child Abuse Central Index (CACI) history for the family; (3) Madera County Social Services Agency records reflecting public assistance for the family, including cash assistance welfare benefits and food stamps; (4) the recordings or transcripts of all child abuse hotline calls, including date and time; (5) the information and narrative hotline workers wrote down memorializing hotline calls about any abuse of the children; (6) the recommended response to the hotline call; (7) the response to the hotline call the hotline supervisor approved; (8) any information forwarded to the emergency response child maltreatment investigator following the hotline call; (9) recordings reflecting the agency's decisionmaking and interactions with the family following emergency response investigations, including delivered service logs and emails; (10) recordings of calls to police that were forwarded or summarized in reports to Children and Family Services; (11) all county email and correspondence related to the handling of the children's cases; and (12) all county correspondence relating to former employee Sierra Lindman, to the extent it concerned the children's cases or a group of cases including the children's. Therolf asserts in his writ petition that media reported Lindman was the subject of a Madera County District Attorney criminal investigation for allegedly intentionally discarding hundreds of child abuse reports.

department asserted Therolf's stated purpose for obtaining the records—to report on the children's involvement with child protective services—served only Therolf's self-interest as he stood to gain financially from such reporting and did not serve a legitimate purpose related to the well-being of the children or their surviving siblings. The department further asserted release of the requested information could be detrimental to the safety, protection, or emotional and physical well-being of the surviving siblings, and no purpose had been articulated that outweighed their right to privacy and confidentiality. Finally, the department asserted it was informed and believed Therolf had requested records pertaining to child deaths/near deaths, which was denied except for disclosure of a "SOC 826," which was attached to both objections, and Therolf was seeking to circumvent that denial with his requests.[7]

On February 26, 2021, the juvenile court filed an order on each petition using mandatory form JV-573. On both orders, the court checked item 5, which states: "The child is deceased and the court will conduct a review of the juvenile case file and any filed objections."

That same day, the juvenile court signed and filed an "Order After Judicial Review on Petition for Access to Juvenile Case File" using mandatory form JV-574. On both orders, the juvenile court checked the box next to item 2, which states: "After a review of the juvenile case file and review of any filed objections … the court denies the request." As reasons for denying the request for D.S.'s juvenile case file, the court checked the following boxes: (1) "Access is not in the child's best interests"; (2) "Petitioner has not shown by a preponderance of the evidence that the records

---

[7] The "SOC 826 – CHILD FATALITY/NEAR FATALITY COUNTY STATEMENT OF FINDINGS AND INFORMATION" form attached to both objections, which was completed on July 30, 2020, states that a two-year-old male was living with his parents both at the time of the abuse/neglect that led to the fatality and at the time of the fatality; an investigation was conducted by law enforcement and "CWS/Probation"; and CWS/Probation determined the fatality was due to abuse and neglect.

requested are necessary and have substantial relevance to the legitimate need of the petitioner"; (3) "There are no responsive records"; and (4) "Other." Under "Other" was handwritten: "no records exist." As reasons for denying the request for T.S.'s juvenile case file, the court checked the following boxes: (1) "Access is not in the child's best interests"; (2) "The need for access does not outweigh the privacy rights of the child and the policy considerations favoring confidentiality of the juvenile case file"; and (3) "Petitioner has not shown by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner."

On both orders the juvenile court also checked the box next to item five, which states: "The child is deceased and the request is denied. The court finds by a preponderance of the evidence that access to the juvenile case file or of any portion of it is detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the request."

Therolf filed notices of appeal from the orders denying his petitions on April 23, 2021.[8] On June 29, 2021, Therolf also filed this petition for extraordinary writ of mandate or prohibition (the writ petition), which is authorized by section 827(a)(2)(F).[9]

## DISCUSSION

### I. Release of a Deceased Child's Juvenile Records

"Section 827 governs the granting of access to confidential juvenile records by individuals and the public." (*Elijah S., supra*, 125 Cal.App.4th at p. 1541.) In 1999,

---

[8] The appeal from the order concerning T.S. is pending in case No. F082698, while the appeal from the order concerning D.S. is pending in case No. F082701. An order denying a petition for review of juvenile case records is appealable as a final judgment in a special proceeding. (*Pack, supra*, 89 Cal.App.4th at p. 826, fn. 4 (*Pack*).)

[9] Section 827(a)(2)(F) provides that "[a]n order of the court shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ."

prompted by the deaths of several dependent children, the Legislature decided to create an inroad into the barrier of confidentiality protecting juvenile court records and open a deceased child's records to public scrutiny to "promote free investigation, uncover any government culpability, and prompt necessary changes in the system of placing and monitoring dependents." (*Pack, supra*, 89 Cal.App.4th at p. 828.) To that end, the Legislature amended section 827(a)(2) to provide the juvenile case files of a *deceased* child "who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection." (§ 827, former subd. (a)(2), as amended by Stats. 1999, ch. 996, § 22.3.)[10]

While the juvenile records of living children are entitled to a "veritable presumption in favor of confidentiality," when the child is deceased, section 827(a)(2), created "a veritable presumption in favor of release." (*Pack, supra*, 89 Cal.App.4th at p. 829.) "Thus, unlike records pertaining to a living dependent, which must be maintained as confidential unless some sufficient reason for disclosure is shown to exist, records pertaining to a deceased dependent must be disclosed unless the statutory reasons for confidentiality are shown to exist." (*Ibid.*)

---

**10**   Section 827, former subdivision (a)(2), as amended, provided in its entirety: "Notwithstanding any other law and subject to subparagraph (A) of paragraph (3), juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, which pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection. Any information relating to another child or which could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary. Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order issuing an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827, former subd. (a)(2), as amended by Stats. 1999, ch. 996, § 22.3.)

## A.    The *Pack* Decision

Two years later, in 2001, this court addressed the construction and application of section 827 (a)(2) in *Pack*. (*Pack, supra*, 89 Cal.App.4th at p. 825.)  There, two newspapers brought petitions for access to the juvenile case files of a dependent child whose foster mother was charged with his murder.  (*Id.* at pp. 825–826.)  After a hearing and review of the records in camera, the juvenile court denied the petitions, finding release of any information from the files "'would be detrimental to the safety, protection, physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case.'"  (*Id.* at p. 826.)

On appeal, we rejected the newspapers' contention that redaction was the only tool available to protect other children and concluded, based on the statute's language, the juvenile court's power to restrict or deny access to a deceased child's records was an alternative to redaction.  (*Pack, supra*, 89 Cal.App.4th at pp. 827, 830–831.)  We explained the statute allows the juvenile court to redact information concerning living children to maintain the confidentiality that pertains to them, but where redaction is insufficient to protect the living child, the juvenile court may limit or prohibit access to all or part of the records when disclosure would be detrimental to the living child.  (*Id.* at pp. 829–830.)  Inasmuch as the statute manifests a legislative intent that information about the deceased child is not to be excised even if the information relates to or identifies another child, once the juvenile court redacts information pertaining solely to the living child, the court may limit or prohibit the dissemination of information about the deceased child if it concludes that information would "somehow tend to harm the other child."  (*Pack, supra*, 89 Cal.App.4th at pp. 830–831, fn. omitted.)

We also rejected the newspapers' assertion the juvenile court was required to provide specific factual findings when finding release of the records would be detrimental to a living child.  (*Pack, supra*, 89 Cal.App.4th at pp. 831–832.)  We concluded it was sufficient for the juvenile court to recite the statute's language, as "the statutory language

9.

describes a circumstance that is as concrete as it rationally can be, given the confidential nature of the information about the other children." (*Id.* at p. 833.) Moreover, a finding of a detriment to a living child "recites a legitimate reason for retention and provides the appellate court with a point on which to focus its evaluation of the record," and reflects an "implicit determination" that redaction "would not guard the interests of that child because of the nature of the information pertinent to [the deceased child]." (*Id.* at pp. 833–834.)[11]

We determined substantial evidence is the appropriate standard of review of a juvenile court's order withholding a deceased child's records based on prejudice to an involved child. (*Pack, supra*, 89 Cal.App.4th at p. 838.) Applying this standard to the records the parties submitted to the juvenile court to review, we concluded substantial evidence supported the court's refusal to release the deceased child's records. (*Id.* at p. 841.)[12] We explained that after reviewing the records, we understood why the juvenile court found it "difficult to expound on its conclusions" without compromising the living child's interests and agreed the records' contents justified the conclusion that "release of any part of them would be highly detrimental to the well-being of another child." (*Pack, supra*, at p. 841.) The records showed the children were intimately linked in the dependency proceeding, as the initial dependency petition named another child, the subsequent documents and reports involved the other child, and the child welfare agency

---

[11]    In so holding, we were concerned that "any more specific standard would risk, on the one hand, the exclusion of a case where the maintenance of confidentiality is appropriate and, on the other, the disclosure of confidential information in an effort to support a decision intended to protect that information." (*Pack, supra*, 89 Cal.App.4th at p. 834.)

[12]    The parties had agreed the juvenile court would review the records in camera, which we noted was an appropriate procedure that involved the parties presenting a general outline of their respective positions supported by nonconfidential or nonprivileged evidence and identifying the specific confidential or privileged evidence for in camera review, with the juvenile court preserving the in camera records for later appellate review. (*Pack, supra*, 89 Cal.App.4th at pp. 826, 837 & fn. 14.)

closely supervised both children, which made it impossible to disclose information relating to the deceased child without disclosing the identity of, or information prejudicial to the interests of, the living child. We further found redaction was not a reasonable remedy as little in the files related only to the living child and if only that child's name were excised, what remained would serve to identify that child and open to view information that was relevant and prejudicial to that child. (*Id.* at pp. 841–842.)[13]

### B. The *Elijah S.* Decision

Four years later, the First District Court of Appeal was presented with the issue of "whether section 827 permits the disclosure of juvenile records in cases involving deceased children where no formal jurisdictional petition had been filed in juvenile court." (*Elijah S., supra*, 125 Cal.App.4th at p. 1538.) There, two newspapers conducting a journalistic investigation filed petitions for disclosure of child welfare agency and juvenile court records pertaining to two deceased children who they alleged were juvenile court dependents at the time of their deaths. (*Id.* at p. 1539.) At the hearing on the petitions, a child welfare services supervisor testified the agency had not filed a dependency petition with respect to either child, and there were no court records in either case, although she acknowledged the agency generated records regarding any child until the child reached 21 years old, which were maintained indefinitely, and did not testify there were no agency records regarding the children. (*Id.* at p. 1540.) The juvenile court granted the petitions for disclosure of the agency's records, finding that under section 827 and the case law interpreting it, it had authority to determine whether to release juvenile records regardless of whether formal jurisdictional proceedings had been initiated. (*Elijah S., supra*, at p. 1540.)

---

[13]  Although not required, we also independently reviewed the deceased child's records and concluded their release would be "'detrimental to the safety, protection, or physical, or emotional well-being of another child'" directly connected to the deceased child's case and redaction from the case file of all information "pertaining solely to the other child is not a viable, less restrictive alternative." (*Pack, supra*, 89 Cal.App.4th at p. 842.)

The appellate court agreed, holding that in light of the statute and applicable case law, "the juvenile court has exclusive authority to order release of juvenile records of deceased minors who come within its jurisdiction pursuant to section 300," regardless of whether a juvenile dependency petition had been filed prior to or concurrently with the filing of a petition for disclosure under section 827. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1538–1539; accord, *id.* at p. 1556.)

To reach this holding, the appellate court began with the only jurisdictional requirement set out in section 827(a)(2) for the mandatory release of juvenile case files, namely, that the files "'pertain to a deceased child *who was within the jurisdiction of the juvenile court pursuant to Section 300.*'" (*Elijah S., supra*, 125 Cal.App.4th at p. 1543.) The appellate court noted under section 300, a child who has suffered or will likely suffer specified physical or emotional neglect or abuse is within the juvenile court's jurisdiction, which may adjudge the child to be a dependent of the court, and section 300 does not require the filing of a dependency petition as a prerequisite to the exercise of juvenile court jurisdiction. (*Elijah S., supra*, at pp. 1543–1544.) The appellate court reasoned that since section 300 implies that a child may come within the juvenile court's jurisdiction before the juvenile court adjudges the child to be a dependent, "[b]y extension, 'a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300' for purposes of section 827, subdivision (a)(2) need not have been the subject of any section 332 dependency petition for the juvenile court to have jurisdiction to release his or her records." (*Elijah S., supra*, at p. 1544.)

The appellate court concluded the petitioning party must make the threshold jurisdictional showing the "deceased minor 'was within the jurisdiction of the juvenile court' under section 300 by virtue of the fact said minor 'comes within any of the … descriptions' set out in that statute." (*Elijah S., supra*, 125 Cal.App.4th at p. 1544.) Noting the juvenile court did not expressly find the deceased children came within its jurisdiction pursuant to section 300, the appellate court pointed out the agency failed to

contest the newspapers' allegation the children came within dependency jurisdiction, thereby effectively waiving any opposition to that allegation. (*Elijah S., supra*, at p. 1545.) The appellate court concluded that in ordering disclosure of the records, the juvenile court "made an *implied* determination that the deceased minors came within the definitional descriptions enumerated in section 300, and were therefore within its jurisdiction, and that there was sufficient evidence to support this determination." (*Id.* at pp. 1545–1546.)

The appellate court rejected the agency's argument the juvenile court must have entered a jurisdictional finding pursuant to a previously filed dependency petition as a prerequisite to any juvenile court order permitting disclosure of juvenile case records. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1546, 1551.) The appellate court found the facts that section 827(a)(2) did not refer to dependency petitions and section 827 did not contain any language requiring the filing of a dependency petition before the juvenile court may release juvenile records strongly supports the interpretation the filing of a dependency petition is not a prerequisite for disclosure. (*Elijah S., supra*, at pp. 1546–1547.) The appellate court determined this construction found support in "numerous provisions of the Welfare and Institutions Code that assume a child may be 'within the jurisdiction of the juvenile court' pursuant to section 300 in the absence of, or prior to, the filing of a section 332 petition," including sections 301, 302, subdivision (a), 305, 306, 307, 307.5, 329 and 331. (*Elijah S., supra*, at pp. 1547–1548.)

The appellate court further noted the juvenile court "bears ultimate supervisory responsibility with respect to agency contacts with and actions taken regarding children described by section 300 as 'within the jurisdiction of the juvenile court,'" pursuant to which the records of agency contacts with such children are necessarily under the juvenile court's authority and jurisdiction regardless of whether a dependency petition has been filed. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1548–1549.) While there were no cases directly on point, the appellate court found decisional authority in several

13.

analogous cases supported the juvenile court's jurisdictional authority to release records relating to a deceased child under section 827(a)(2) despite the absence of a dependency petition.[14] The appellate court concluded that because nothing in the statute suggests the juvenile court lacks authority or jurisdiction to release a deceased child's juvenile case files unless a dependency petition had been filed, the juvenile court has that authority and jurisdiction, therefore "the juvenile court did not err in doing so in this case, pursuant to its implied jurisdictional determination under section 300." (*Elijah S., supra*, at p. 1551.)

The appellate court rejected the agency's argument the statutory definition of "'juvenile case file'" found in section 827, subdivision (e)[15] and the California Rules of Court[16] shows the juvenile court is without jurisdiction to order disclosure of juvenile records of deceased children in the absence of a dependency petition. (*Elijah S., supra*, 125 Cal.App.4th at p. 1551.) The appellate court noted: (1) the statutory definition includes "written reports and documentation [that] are not always required to be filed

---

**14**      The appellate court cited to *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, *Wescott v. County of Yuba* (1980) 104 Cal.App.3d 103, and *Lorenza P. v. Superior Court* (1988) 197 Cal.App.3d 607. As the court explained in *Elijah S.*, in *T.N.G. v. Superior Court*, our Supreme Court upheld the juvenile court's authority and jurisdiction "to control the juvenile records of minors who had been temporarily detained by juvenile court authorities and then released without any further proceedings such as the filing of petitions for dependency or wardship." (*Elijah S., supra*, 125 Cal.App.4th at p. 1549.) Similarly, the appellate court in *Wescott v. County of Yuba* "upheld the juvenile court's authority and jurisdiction under section 827 to control the release or disclosure of all records of juvenile arrests or detentions, even where no juvenile petition had ever been filed and no juvenile court proceedings were pending." (*Elijah S., supra*, at pp. 1549–1550.) Finally, the *Elijah S.* court noted the appellate court in *Lorenza P. v. Superior Court* reiterated that the juvenile court has exclusive jurisdiction to determine the extent to which agency files may be released, even if juvenile court proceedings are not instituted and the matter is handled informally. (*Elijah S., supra*, at p. 1550.)

**15**      Section 827, subdivision (e) provides: "For purposes of this section, a 'juvenile case file' means a petition filed in a juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available to the probation officer in making the probation officer's report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer."

**16** Further references to rules are to the California Rules of Court unless otherwise indicated.

directly with the juvenile court, and are frequently under the control of the applicable county agencies rather than in the possession of the juvenile court"; (2) section 827, subdivision (e) does not specifically require the filing of a dependency petition as a "precondition to a juvenile court's having jurisdiction over these 'juvenile case files'"; and (3) there was no "indication that documents generated or maintained by social workers, probation officers and public agency personnel with respect to *suspected* cases of child neglect or abuse must be filed with the juvenile court *before* they may be included in the definition of 'juvenile case files' subject to release under section 827, subdivision (a)(2)." (*Elijah S., supra*, at p. 1552.) Accordingly, the appellate court concluded "the term 'juvenile case file,' as defined and used in section 827, 'covers a wide range of records, including agency files where no juvenile court proceedings have been instituted and the matter is handled informally. [Citations.]'" (*Id.* at p 1552, quoting 87 Ops.Cal.Atty.Gen. 72, 75–76 (2004).)[17]

Finally, the appellate court determined the legislative history supported "the conclusion that in enacting section 827, subdivision (a)(2), the Legislature intended to significantly *increase* the public's right of access to otherwise confidential juvenile records concerning deceased children, by creating a *presumption* in favor of the release of such records based on the premise that the child's death had eliminated his or her legal interest in the confidentiality of such records." (*Elijah S., supra*, 125 Cal.App.4th at p. 1555.) Thus, the Legislature's intent was not to further limit the juvenile court's authority to order disclosure of this information, but rather to "*require* the juvenile court to release the records unless the privacy rights of third parties were involved," and the

---

**17**     Similarly, the appellate court found former rule 1423 (now rule 5.552(a)), which listed documents included in the term "juvenile case file," did not mention a requirement that a dependency petition be filed before a juvenile court may order the release of juvenile case files and included documents that may have been generated by investigations preceding the filing of any dependency petition, none of which are contingent on a petition ever having been filed. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1552–1553.)

15.

Legislature wanted to open "the workings of the entire juvenile court and child protective system" to public view "for the purpose of exposing deficiencies therein, and thereby enabling their correction." (*Ibid.*) The appellate court concluded this purpose "would not be advanced by limiting disclosure of juvenile records to only those generated and maintained by the juvenile court *after* a minor had already been declared a dependent," and restricting the juvenile court's power "would effectively make it *impossible* to investigate the kinds of errors or negligence that might lead to the death of a minor *before* the responsible agency had filed a dependency petition with the juvenile court." (*Id.* at p. 1556.) Instead, these deficiencies could be exposed only "if the juvenile court maintains authority to order the release of such documentation regardless of whether or not a juvenile dependency petition had previously been filed." (*Ibid.*)

### C.    The 2007 Statutory Amendments

Thereafter, concerns were raised that the procedure established in section 827, former subdivision (a)(2) for "accessing files of children who died as a result of abuse or neglect has proven to be difficult and too costly to use because the courts lack clear guidance, resulting in delays as well as inconsistencies between counties on what information is required to be disclosed," thereby frustrating "the ability to review these cases of child death promptly and to advocate for changes to prevent any other child from suffering the same fate." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 39 (2007–2008 Reg. Sess.) as amended Apr. 19, 2007, pp. 2–3; see Stats. 2007 (2007–2008 Reg. Sess.) ch. 468, § 1(d) (Senate Bill 39 or Sen. Bill 39).)[18] The Legislature became

---

[18]    We previously informed the parties we may take judicial notice, on our own motion, of certain legislative history materials related to the 2007 amendments to section 827, and now conclude judicial notice is proper. (See Evid. Code, §§ 452, 455, subd (a), 459 subd. (c); *Doe v. City of Los Angeles* (2007) 42 Cal.4th 534, 544, fn. 4; *Hensel Phelps Construction Co. v. Superior Court* (2020) 44 Cal.App.5th 595, 611, fn. 4.) Therefore, we will take judicial notice of the material identified in the text above, as well as the following: (1) Assembly Committee on the Judiciary, Analysis of Senate Bill 39 (2007–2008 Reg. Sess.) as amended June 12, 2007; and

concerned the standards for disclosure were vague and provided the juvenile court judge so much discretion that counties that wanted "to avoid public scrutiny of their operations when children die on their watch" could find "an abundance of grounds for generating litigation," which "thwart[s] one of the aims of public disclosure," namely, to prevent future deaths, and creates litigation costs that effectively block nonprofits from seeking documents. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, pp. 5–6.)

To address these concerns, in 2007 the Legislature established an expedited process for the release of specific information in county welfare agency records that relate to the death of a child and to clarify the presumption of disclosure in existing law, subject to the statutory grounds limiting or prohibiting disclosure. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3.) The process consists of a "three-part approach to increasing public access to information surrounding the death of a child from abuse or neglect": (1) an informational announcement is made about the death, which provides limited information regarding the deceased child where there is a reasonable suspicion the death is the result of abuse or neglect; (2) specified documents in a county welfare agency's juvenile case file related to the child's death may be provided without court review when the child's death is substantiated to be from abuse or neglect; and (3) the court procedure for access to other documents not provided under the first two categories is expedited, with additional legislative guidance given to courts in reviewing section 827(a)(2) petitions for disclosure of a deceased child's records. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, as amended Apr. 19, 2007, pp. 1, 5; Assem. Com. on Judiciary, Analysis of Sen. Bill 39 (2007–2008 Reg.. Sess.) as amended June 12, 2007, p. 4.)

---

(2) Senate Rules Committee, Office of Senate Floor Analyses, Unfinished Business, Analysis of Senate Bill 39 (2007–2008 Reg. Sess.) as amended June 28, 2007.

In establishing this process, the Legislature expressly declared its intent to "maximize public access to juvenile case files in cases where a child fatality occurs as a result of child abuse or neglect by both providing for an administrative release of certain documents without the filing of a legal petition pursuant to" section 827(a)(2), and "by enacting reforms to the current process of filing a petition pursuant to" section 827(a)(2) "that will offer clarifying guidance to juvenile courts of the legal standards that apply to those petitions and an expedited process for their disposition." (Sen. Bill 39, § 1(e).) The Legislature further declared that "[i]n petitions governed by" section 827(a)(2), "the Legislature has concluded that when a dependent child dies within the jurisdiction of the juvenile court, the presumption of confidentiality for juvenile case files evaporates and the requirement of an expedited decision becomes manifest, because community reaction to the child's death may abate with the passage of time and, without a prompt investigation and assessment, the opportunity to effect positive change may be lost." (Sen. Bill 39, § 1(f).)

To enact these changes, the Legislature added sections 826.7 and 10850.4 to the Welfare and Institutions Code and amended section 827(a)(2). (Sen. Bill 39, §§ 2–4.) Section 826.7 provides: "Juvenile case files that pertain to a child who died as the result of abuse or neglect shall be released by the custodian of records of the county welfare department or agency to the public pursuant to Section 10850.4 or an order issued pursuant to paragraph (2) of subdivision (a) of Section 827." (Sen. Bill 39, § 2.)

Section 10850.4 contains the first two parts of the disclosure requirements. First, section 10850.4, subdivision (a), requires the county welfare agency's custodian of records to release certain information upon request within five business days of learning a child fatality has occurred in the county and "there is a reasonable suspicion that the fatality was caused by abuse or neglect." The following information is required to be released: (1) the child's age and gender; (2) the date of death; (3) whether the child was in foster care or the home of his or her parent or guardian at the time of death; and

18.

(4) whether a law enforcement agency or county child welfare agency is conducting an investigation. (*Id.*, subd. (a)(1)–(4).)

When the child abuse or neglect investigation into the child's death is completed and abuse or neglect is determined to have led to the child's death, as shown by either a county child protective services agency substantiating the abuse or neglect, a law enforcement investigation concluding abuse or neglect occurred, or a coroner or medical examiner concluding the child suffered abuse or neglect, the custodian of records must release certain "documents from the juvenile case file" upon request, subject to redactions set forth in section 10850.4, subdivision (e). (*Id.*, subds. (b) & (c).)[19] Prior to releasing the documents, the custodian of records is required to redact: (1) identifying information of any person or institution mentioned in the documents, other than the county or the State Department of Social Services; (2) "[a]ny information that would,

---

**19** The "documents from the juvenile case file" that must be released differ depending on whether the child was living with a parent or guardian or was in foster care when the child's death occurred. (§ 10850.4, subd. (c)(2) & (c)(3).) As pertinent here, the documents required to be released when the child was living with a parent or guardian, as amended by the Legislature in 2016, are "all previous referrals of abuse or neglect of the deceased child while living with that parent or guardian" (*id.*, subd. (c)(2)) and the following documents: "(A) The emergency response referral information form and the emergency response notice of referral disposition form completed by the county child welfare agency relating to the abuse or neglect that caused the death of the child. [¶] (B) Any cross reports completed by the county child welfare services agency to law enforcement relating to the deceased child. [¶] (C) All risk and safety assessments by the county child welfare services agency to law enforcement relating to the deceased child. [¶] (D) All health care records of the deceased child, excluding mental health records, related to the child's death and previous injuries reflective of a pattern of abuse or neglect. [¶] (E) Copies of police reports about the person whom the child abuse or neglect was substantiated. [¶] (F) A description of child protective or other services provided and actions taken by the child welfare agency, and juvenile court if applicable, relating to the deceased child, addressing any services and actions that are not otherwise disclosed within other documents required for release pursuant to this section, including the date and a written description of any such service or action taken." (*Id.*, subd. (c)(2)(A)–(F); accord, Legis. Counsel's Dig., Assem. Bill No. 1625 (2015–2016 Reg. Sess.) Stats. 2016, ch. 320, § 3, pp. 4–5.) The statute defines the terms "juvenile case files" or "case files" to "include[] any juvenile court files, as defined in Rule 5.552 …, and any county child welfare department or agency or State Department of Social Services records regardless of whether they are maintained electronically or in paper form." (§ 10850.4, subd. (k)(3).)

after consultation with the district attorney, jeopardize a criminal investigation or proceeding"; and (3) "[a]ny information that is privileged, confidential, or not subject to disclosure pursuant to any other state or federal law." (§ 10850.4, subd. (e)(1).)

When the custodian of records receives a request for documents, the custodian is required to "notify and provide a copy of the request upon counsel for any child who is directly or indirectly connected to the juvenile case file." (§ 10850.4, subd. (f).) If counsel for a child, including the deceased child or any sibling of the deceased child, objects to the documents' release, "they may petition the juvenile court for relief to prevent the release of any document or part of a document requested pursuant to" section 827(a)(2). (§ 10850.4, subd. (f).) "Juvenile case records that are not subject to disclosure pursuant to this section shall only be disclosed upon an order by the juvenile court pursuant to Section 827." (*Id.*, subd. (g).)

The Legislature amended section 827, former subdivision (a)(2) to clarify the judicial procedure for release of the juvenile case files of a deceased child. That subdivision was renumbered subdivision (a)(2)(A) and amended to clarify that where a presiding judge is considering limiting or prohibiting access to a juvenile case file, a showing that release of the information is detrimental to the well-being of another child must be made by a preponderance of the evidence.[20] (Sen. Com. on Judiciary, Analysis

---

**20** Section 827(a)(2)(A) now provides: "Notwithstanding any other law and subject to subparagraph (A) of paragraph (3), juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, that pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection. Any information relating to another child or that could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary. Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing by a preponderance of evidence that release of the juvenile case file or any portion thereof is detrimental to the safety, protection,

of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 10.) Subdivision (a)(2)(B) and (a)(2)(C) were added to section 827 to affirm, respectively, there is "a presumption in favor of the release of documents when a child is deceased unless the statutory reasons for confidentiality are shown to exist,"[21] and "[i]f a child whose records are sought has died, and documents are sought pursuant to this paragraph, no weighing or balancing of the interests of those other than a child is permitted." (§ 827, subd. (a)(2)(B) & (a)(2)(C).)[22]

Finally, subdivisions (a)(2)(D) through (F) were added to section 827 to establish the procedure for a court petition to obtain other records not available through administrative release. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 10.) The petitioner serves the petition on interested parties whose identities and addresses are known to the petitioner and on the custodian of records, who in turn must serve a copy of the petition on all interested parties the petitioner did not serve. (§ 827(a)(2)(D).) An interested party, including the custodian of records, may object to the petition and "shall file and serve the objection on the

---

or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition."

[21] In adding subdivision (a)(2)(B) to section 827, the Legislature stated it was affirming the presumption "in favor of the release of information when a child is deceased unless statutory grounds for non- or partial disclosure or redaction of information exist." (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3; Sen. Rules Com., 3d reading of Sen. Bill 39 (2007–2008 Reg. Sess.) as amended May 1, 2007, p. 2.) The Legislature noted that "[e]xisting case law provides that a deceased child is 'within the jurisdiction of the juvenile court' if the court may adjudge that child to be a dependent of the court under § 300, even where no juvenile petition has been filed," citing *Elijah S., supra*, 125 Cal.App.4th 1532. (Sen. Rules Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended May 1, 2007, p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3.)

[22] In adding subdivision (a)(2)(C) to section 827, the Legislature stated it was affirming the holding in *Pack, supra*, 89 Cal.App.4th 821, "that where the child whose records are sought has died, no balancing or weighing of interests is required except where the interests of another child are involved." (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3; Sen. Rules Com., 3d reading of Sen. Bill 39, *supra*, as amended May 1, 2007, p. 2.)

petitioning party no later than 15 calendar days after service of the petition." (*Id.,* subd. (a)(2)(E).) The petitioning party "shall have 10 calendar days to file a reply." (*Id.,* subd. (a)(2)(F).) "The juvenile court shall set the matter for hearing no more than 60 calendar days from the date the petition is served on the custodian of records," and "render its decision within 30 days of the hearing." (*Ibid.*) The juvenile court is required to decide the matter solely upon the basis of the petition, objection, reply, and argument at the hearing, and the court may order the appearance of witnesses on its own motion. (*Ibid.*) If an objection is not filed, the juvenile court "shall review the petition and issue its decision within 10 calendar days of the final day for filing the objection." (*Ibid.*)[23]

## II. The Juvenile Court Committed Prejudicial Error

Against this backdrop, Therolf sought to obtain the children's juvenile case files by filing petitions pursuant to section 827(a)(2). Therolf contends the juvenile court prejudicially erred when it denied his petitions without holding a hearing and considered impermissible factors when deciding whether to release the children's records. We agree.

### A. The Hearing Requirement

Under section 827(a)(2)(F) the juvenile court is required to hold a hearing if an interested party opposes a request for the release of a deceased child's case file.[24] This is

---

[23] Section 827(a)(2)(F) provides: "The petitioning party shall have 10 calendar days to file a reply. The juvenile court shall set the matter for hearing no more than 60 calendar days from the date the petition is served on the custodian of records. The court shall render its decision within 30 days of the hearing. The matter shall be decided solely upon the basis of the petition and supporting exhibits and declarations, if any, the objection and any supporting exhibits or declarations, if any, and the reply and any supporting declarations or exhibits thereto, and argument at hearing. The court may, solely upon its own motion, order the appearance of witnesses. If an objection is not filed to the petition, the court shall review the petition and issue its decision within 10 calendar days of the final day for filing the objection. An order of the court shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ."

[24] We note when interpreting section 827(a)(2), we apply the de novo standard of review. (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986–987; see *County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1314 [trial court does not have discretion to ignore a statute's clear language]; *Thornton v. Carlson* (1992) 4 Cal.App.4th 1249, 1255 [when the trial

clear from the statute, which states "[t]he juvenile court *shall set the matter for hearing*" within 60 days from the date the petition is served on the custodian of records and "*shall render its decision within 30 days of the hearing.*" (§ 827(a)(2)(F), italics added.) Moreover, the matter is to be decided solely on the petition, objection, reply, "*and argument at hearing.*" (*Ibid.*, italics added.) The only exception to the hearing requirement is when an objection is not filed: "If an objection is not filed to the petition, the court shall review the petition and issue its decision within 10 calendar days of the final day for filing the objection." (*Ibid.*)[25]

The department does not dispute the juvenile court was required to hold a hearing. We agree with Therolf that inasmuch as the department filed objections to Therolf's petitions, the juvenile court was required to hold a hearing and consider not only the petition and objection, but also the arguments made at the hearing, before ruling on the petitions. Accordingly, its failure to hold a hearing was error.

---

court's decision is based solely on an interpretation of a statute, appellate court reviews the matter as a question of law].)

[25] Form JV-573 lists six findings and orders the juvenile court may make on a petition for access to juvenile case files. Item 4 provides: "The child is deceased and the court sets a hearing on the request," while item 5, which the juvenile court selected here, provides: "The child is deceased and the court will conduct a review of the juvenile case file and any filed objections." Item 5, however, conflicts with section 827(a)(2)(F), which requires a hearing when objections are filed; in that situation, the juvenile court has no discretion to conduct an in camera review without holding a hearing. We note rule 5.552(d), which sets out the procedure for obtaining the juvenile case files of living children, grants the juvenile court discretion over whether to hold a hearing, as it permits the juvenile court to summarily deny a petition that does not show good cause and provides the juvenile court "*may* set a hearing" if good cause is shown. (*Id.*, (d)(1) & (d)(2), italics added.) Rule 5.553(1), however, provides: "When the juvenile case file of a deceased child is sought, the court must proceed … [u]nder section 827(a)(2) if the request is made by a member of the public …." Since section 827(a)(2)(F) requires a hearing when an objection is filed, the juvenile court does not have the discretion to conduct review of the juvenile case file and any objections, as stated in item 5 on form JV-573, without first holding a hearing.

23.

**B. The Juvenile Court Made Findings Based on Impermissible Factors**

It is apparent from the juvenile court's orders that it misapprehended the standards it was to apply in determining whether to release the children's juvenile case files. The juvenile court was required to release the case files unless it found, by a preponderance of the evidence, that releasing them would be detrimental to "the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition" considering only the interests of a surviving child. (§ 827(a)(2)(A) & (a)(2)(C).) There is a presumption in favor of release of a deceased child's juvenile case file and the juvenile court "has no discretion and *must* release all the records of the deceased child in the absence of proof (1) that there exists 'another child who is directly or indirectly connected to the juvenile case,' and (2) that release of all or a portion of the deceased child's records is 'detrimental to the safety, protection, or physical, or emotional well-being' of the other child." (*Pack, supra*, 89 Cal.App.4th at p. 838.)

The juvenile court denied access to the children's juvenile case files based on findings that pertain to a petition seeking disclosure of the juvenile case files of living children that apply a presumption in favor of confidentiality. (*Pack, supra*, 89 Cal.App.4th at p. 829.) In deciding whether to authorize the inspection or release of the juvenile case files of living children, "the court must balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public," and if it grants the petition, it "must find that the need for discovery outweighs the policy considerations favoring confidentiality of juvenile case files." (Rule 5.552(d)(4) & (d)(5).) Moreover, "[t]he court may permit disclosure of juvenile case files only insofar as is necessary, and only if petitioner shows by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." (*Id.*, (d)(6).)

The juvenile court denied access to the children's juvenile case files based on a finding in T.S.'s case that "[t]he need for access does not outweigh the privacy rights of the child and the policy considerations favoring confidentiality of the juvenile case file," and findings in both cases that Therolf "has not shown by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." (See Rule 5.552(d)(4) & (d)(5).) But these findings pertain only to the juvenile case files of living children. In making these findings, it did not specify which child's privacy rights it was considering and placed the burden on Therolf to justify his need for the case files and to show that need outweighed the privacy rights of "the child" and "policy considerations favoring confidentiality." The orders also do not state which child the juvenile court was considering when it also found "[a]ccess is not in the child's best interests."

In addition, D.S.'s order is conflicting; while the order states both "[t]here are no responsive records" and "no records exist," it also denies access on the ground disclosure would be detrimental to another child's well-being, thereby implying that records do indeed exist. Therolf asserts this shows the juvenile court endorsed the department's representation that no juvenile case files existed for D.S. because she was never a dependent and concluded section 827 requires a dependency petition to establish the existence of a juvenile case file, in contravention of the holding in *Elijah S.* that the filing of a dependency petition is not required to establish a deceased child came within the jurisdiction of the juvenile court under section 300, as set out in section 827(a)(2)(A). (*Elijah S., supra*, 125 Cal.App.4th at p. 1556.) It is impossible to tell from the orders, however, whether the juvenile court followed *Elijah S.* or departed from it.

The orders are hopelessly confusing and make it uncertain the juvenile court understood the statute's terms and the presumption in favor of release. (See *Pack, supra*, 89 Cal.App.4th at p. 841, fn. 15 [noting the record established "the juvenile court understood the terms of the statute, including the presumption in favor of release"].) It

appears the juvenile court failed to apply a presumption in favor of release, and instead applied an impermissible presumption in favor of confidentiality. Moreover, since the order does not specify which "child" is being referred to with respect to the various findings, it is impossible to know whether the juvenile court impermissibly considered the interests of the deceased child, which are irrelevant to determining whether the release of the juvenile case file is detrimental to another child who is connected to the juvenile case.

The juvenile court abused its discretion when it based its decision on impermissible factors. (*People v. Knoller* (2007) 41 Cal.4th 139, 156 [an abuse of discretion arises when a trial court bases "its decision on impermissible factors" or "an incorrect legal standard"]; *Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850, 862 [trial court abuses its discretion when its action "'transgresses the confines of the applicable principles of law'"].)

## C. *Elijah S.* Controls

We recognize, as the department points out, the juvenile court also denied Therolf's petitions on a permissible ground, namely it found by a preponderance of the evidence that access to the children's juvenile case files would be detrimental to another child connected to their cases. To determine whether we could affirm the juvenile court's orders based on this finding, we ordered the juvenile court to provide us with the documents it reviewed, under seal.

In D.S.'s case, we were not provided with any documents and were informed no file was received at an in camera hearing held on February 26, 2021. Thus, it appears the juvenile court did not review any documents, which supports its finding that no records exist and suggests the juvenile court may have accepted the department's argument that no juvenile case files existed because D.S. was never a dependent. In T.S.'s case we were provided with documents from a juvenile dependency case that was commenced when he went missing, in which he and his siblings were alleged to come within the

juvenile court's jurisdiction under section 300. The documents show that after T.S.'s body was discovered and identified, his dependency case was dismissed prior to any jurisdictional finding made with respect to him.

It is undisputed that when D.S. died, there was no dependency petition pending in the juvenile court concerning her and the juvenile court had not found she was "within the jurisdiction of the juvenile court pursuant to Section 300" as required under section 827(a)(2)(A), while in T.S.'s case, a juvenile dependency case was commenced but it was dismissed before a jurisdictional finding was made with respect to him.

Under *Elijah S.*, however, neither the filing of a dependency petition nor a prior jurisdictional finding is required for section 827(a)(2) to apply. Rather, the juvenile court has exclusive authority to order release of a deceased child's juvenile records regardless of whether a dependency petition has been filed and a prior jurisdictional finding has been made. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1538–1539, 1556.) Thus, a party seeking the juvenile case file of a deceased child may obtain those records if that party can show that child "'was within the jurisdiction of the juvenile court'" under section 300 when the child died. (*Elijah S., supra*, at pp. 1544–1545.)

The department argues *Elijah S.* is wrongly decided and urges us not to follow it. We rejected this argument, however, in the related case of *Therolf v. Superior Court* (June 27, 2022, F083561) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 556], in which Therolf unsuccessfully sought to obtain the juvenile case files of a deceased child whose adoptive mother was convicted of her murder. There, we declined the department's invitation to depart from *Elijah S.*, in part because the Legislature was aware of the holding in *Elijah S.*, yet it did not disapprove of the case or amend the statute to require a dependency petition or a prior jurisdictional finding. (*Therolf v. Superior Court, supra*, at p. ___ [2022 Cal.App. Lexis 556, *31].)

Since neither the filing of a dependency petition nor a prior jurisdictional finding is required for section 827(a)(2) to apply, Therolf may seek the juvenile case files

27.

concerning the children by petitions pursuant to that section if he can show the children were within the jurisdiction of the juvenile court under section 300. The department argues that because Therolf did not allege any facts to support a jurisdictional finding in his petitions or refer to evidence he would have presented at a hearing on the petitions that would be dispositive of the issue, the juvenile court correctly denied the petitions because section 827(a)(2) does not apply.

Therolf responds the circumstances surrounding the children's deaths "incontrovertibly establish" they were at substantial risk of abuse or neglect by their parents, as required for a jurisdictional finding under section 300. Therolf asserts D.S. came within the juvenile court's jurisdiction under section 300 because dependency proceedings were instituted with respect to her surviving siblings following her death and her mother has since been charged with causing her death.[26] Similarly, Therolf asserts T.S. came within the juvenile court's jurisdiction because he suffered fatal abuse at the hands of his parents, who are charged with his murder.

It is not clear from the juvenile court's orders whether it found the children came within its jurisdiction under section 300 despite the absence of prior jurisdictional findings. The evidence before the juvenile court, however, establishes the children were within its jurisdiction at the time of their deaths. As Therolf points out, D.S. allegedly was killed by her mother, while T.S. allegedly was killed by both parents. Moreover, T.S.'s juvenile case file contains evidence concerning the treatment of D.S. and T.S. prior to their deaths, which establishes they came within the provisions of section 300, subdivision (b)(1), as they were at risk of physical harm or illness due to the willful or negligent failure of their parents to adequately supervise or protect them. Because the

---

[26] The department filed a request for judicial notice, asking us to take judicial notice of an amended complaint filed in Madera Superior Court, which shows T.S.'s parents have been charged with his murder and assault causing his death, and mother has been charged with D.S.'s August 16, 2015, murder and assault causing her death. We deferred ruling on this request, which we now grant.

children were within the juvenile court's jurisdiction under section 300 when they died, the department must produce their juvenile case files within the meaning of section 827(a)(2)(A) and *Elijah S.*[27]

### D. *Pack* Controls

#### 1. Factual Findings Are Not Required

Therolf contends that contrary to our opinion in *Pack*, the department was required to present evidence of detriment and the juvenile court was required to make factual findings to support its detriment finding. Therolf asks us to revisit the *Pack* decision, but we decline to do so as we see no reason to deviate from it in this case.

As we explained in *Therolf v. Superior Court, supra*, ___ Cal.App.5th at page ___ [2022 Cal.App. Lexis 556, *37–40], in which we rejected this argument in a related case, a juvenile court is not required to make specific factual findings when it denies access to a deceased child's juvenile case file based on a finding of detriment to a connected child because requiring such findings could result in the disclosure of confidential information, which is also a concern when a party objects to the release of a deceased child's juvenile case file on that basis. (*Id.* at p. ___ [2022 Cal.App. Lexis 556, *37].) Given the need to

---

[27] We note many of the documents Therolf seeks are documents listed in section 10850.4, subdivision (c)(1) and (c)(2), which he is entitled to obtain without a court order if abuse or neglect led to the children's deaths. (§ 10850.4, subds. (b) & (c).) While nothing prevents Therolf from obtaining these documents through a petition under section 827(a)(2) (*Therolf v. Superior Court, supra*, ___Cal.App.5th at p. ___ [2022 Cal.App. Lexis 556, *34], the department asserted in its objections that it believed Therolf previously submitted a request for these documents and was provided with only the "SOC 826" form concerning T.S.'s death, presumably because the remaining documents were withheld on the ground they contained "information that would, after consultation with the district attorney, jeopardize a criminal investigation or proceeding." (§ 10850.4, subd. (e)(1)(B).) As we explained in *Therolf v. Superior Court, supra*, at page ___ [2022 Cal.App. Lexis 556, *35–36], Therolf is entitled to release of the documents in the categories listed under section 10850.4, subdivision (c)(1) and (c)(2) subject to the redactions mandated by section 10850.4, subdivision (e)(1), which includes that their release would jeopardize a criminal investigation or proceeding, and subject to the juvenile court prohibiting or limiting access if release of the documents would be detrimental to a connected child's safety, protection, or physical or emotional well-being.

maintain confidentiality of juvenile records, we see no reason to depart from *Pack* and require factual findings.

## 2. The In Camera and Record Preservation Procedures

As we explained in *Therolf v. Superior Court*, "the appropriate procedure when determining whether to release records pursuant to a petition under section 827(a)(2) is to have 'the parties present a general outline of their respective positions supported by nonconfidential or nonprivileged evidence' and 'identify the specific confidential or privileged evidence for in camera review.'" (*Therolf v. Superior Court, supra*, ___ Cal.App.5th at p. ___ [2022 Cal.App. Lexis 556, *40].) The department, as the custodian of records, produces the responsive documents for the juvenile court to review and the juvenile court, in conducting its in camera review of the documents, is required to determine whether, after information that solely concerns a connected child is redacted, release of the documents would be detrimental to the connected child, and preserve the in camera record for appellate review. (*Id* at p. ___ [2022 Cal.App. Lexis 556, *40–41].)

While the juvenile court is not required to make specific factual findings if it withholds documents based on a finding of detriment to a connected child, it should make a record of its findings adequate for review of its ruling. (*Therolf v. Superior Court, supra*, ___ Cal.App.5th at p. ___ [2022 Cal.App. Lexis 556, *41–42].) This includes identifying the documents from the juvenile case file it reviewed in camera and, if it withholds any documents based on a finding of detriment to a connected child, identifying the withheld documents while maintaining confidentiality. (*Id.* at p. ___ [2022 Cal.App. Lexis 556, *42].)

None of that occurred here, except for the juvenile court's review of T.S.'s dependency case file. We reviewed T.S.'s dependency case file, and while it appears information concerning T.S.'s siblings could be redacted on some documents without impacting information concerning T.S., the file contains documents that are discoverable under section 10850.4, subdivision (c)(2), but may qualify for redaction under

30.

section 10850.4, subdivision (e)(1)(B), as containing information that could jeopardize a criminal investigation or proceeding. With respect to D.S., the juvenile court could not have found release of the juvenile case file would be detrimental to a connected child without reviewing documents that comprise the juvenile case file—it cannot make that finding in the abstract. Accordingly, there is no evidence to support the juvenile court's denial of the petition on that ground.

In addition, it does not appear the juvenile court was provided with all responsive documents. Under *Elijah S.*, the term "'juvenile case file'" as used in section 827 "'covers a wide range of records, including agency files where no juvenile court proceedings have been instituted and the matter is handled informally. [Citations.]'" (*Elijah S., supra*, 125 Cal.App.4th at p. 1552, quoting 87 Ops.Cal.Atty.Gen., 75–76 (2004); see § 827, subd. (e) ["'juvenile case file'" includes documents "made available to the probation officer in making the probation officer's report"]; § 10850.4, subd. (k)(3) [for purposes of § 10850.4, "'[j]uvenile case files' or 'case files' includes any juvenile court files, as defined in Rule 5.552 …, and any county child welfare department or agency or State Department of Social Services records"].) It appears the juvenile court reviewed only documents filed in T.S.'s juvenile dependency case, rather than documents that were within the department's possession. Moreover, to the extent it may have reviewed such records, it did not preserve them for our review.

### E. The Errors Were Prejudicial

As we have explained, the juvenile court committed several errors in denying the petitions by: (1) failing to hold a hearing; (2) relying on impermissible factors; (3) finding detriment without reviewing the documents that comprise the children's juvenile case files consistent with *Elijah S.*; and (4) failure to preserve a reviewable record in accordance with *Pack*. Even where a juvenile court has erred, however, we will reverse only if the error was prejudicial, i.e., "'"'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the

31.

error.""'" (*In re Adam H.* (2019) 43 Cal.App.5th 27, 32, quoting *In re Abram L.* (2013) 219 Cal.App.4th 452, 463.)

It was patently prejudicial not to follow *Elijah S.* and require the department to provide the children's juvenile case files consistent with that opinion, as these failures may have deprived Therolf of documents to which he is entitled. The juvenile court's failure to preserve a record adequate for any meaningful review also was prejudicial. Given these errors we cannot say the failure to hold a hearing, at which these matters would have been fleshed out, was harmless. If a hearing had been held, we would have the benefit of what the juvenile court considered and some understanding of its order and reasoning. Instead, in D.S.'s case, we are left with the juvenile court's decision to withhold documents based on detriment to a connected child without any documents to support that decision and its apparently conflicting finding that no records exist, but without any assurance the juvenile court inquired whether the department possessed documents pertaining to D.S. consistent with *Elijah S.* Similarly, with respect to T.S., while the juvenile court reviewed some responsive documents, there is nothing to suggest the juvenile court asked the department whether it possessed other responsive documents.

Because we cannot affirm on any ground the juvenile court relied on to deny the petitions, and we cannot determine whether the juvenile court was provided with all responsive documents with respect to both children and whether T.S.'s dependency case file contains documents that may be withheld under section 10850.4, subdivision (e), we must vacate the juvenile court's orders and remand for a hearing on the petitions. The juvenile court must (1) order the department to produce the children's juvenile case files in accordance with *Elijah S.*, (2) review the juvenile case files in camera to determine whether, after information that is solely about any connected children is redacted, it can find by a preponderance of the evidence, that release of the remaining information would be detrimental to a connected child's safety, protection, or physical or emotional well-being, and (3) make a reviewable record by preserving the in camera record for appellate

review.[28]  In conducting its review, the juvenile court must apply the appropriate standards, namely, that there is a presumption in favor of release of a deceased child's juvenile case file unless the statutory reasons for confidentiality are shown to exist, and the only interests that may be weighed or balanced are those of a child.  (§ 827(a)(2)(B) & (a)(2)(C).)

## DISPOSITION

We grant Therolf's petition.  Let a peremptory writ of mandate issue directing the juvenile court to vacate its February 26, 2021, orders issued on forms JV-573 and JV-574 and hold a hearing on Therolf's requests for disclosure of the juvenile case files of T.S. and D.S. consistent with this opinion.  Therolf shall recover his costs incurred in this proceeding.

MEEHAN, J.

I CONCUR:

LEVY, Acting P. J.

---

[28]  Therolf filed two requests for judicial notice, which we deferred ruling on, asking us to take judicial notice of the following:  (1) two Fresno Bee articles that disclose information concerning the children, their parents, and their siblings, which Therolf asserts is relevant because the articles demonstrate information about the family is in the public domain and possibly known by the surviving siblings; and (2) Therolf's request for disclosure of the juvenile case file of another deceased child who is unrelated to this family, which he filed in Madera Superior Court, along with the department's objection and two juvenile court orders denying the request, which he asserts are relevant because they show the juvenile court continues to violate the mandates of section 827(a)(2).  We deny both requests for judicial notice since the documents are not relevant to our disposition of this matter.

33.

POOCHIGIAN, J., Concurring.

I concur with the majority's holding that a writ should issue since the court erred in failing to hold a hearing. (See Welf. & Inst., § 827, subd. (a)(2)(F).)[1] However, I write separately to express doubt regarding the interpretation of section 827, subdivision (a)(2)(A) set forth in *In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1543 (*Elijah S.*).

*Statutory Interpretation*

*Elijah S.* reads the phrase "within the jurisdiction of the juvenile court pursuant to Section 300" (§ 827, subd. (a)(2)(A)) to include any child described by section 300, regardless of whether a dependency court had "taken jurisdiction" over the child or not. There are several problems with this reading.

The word "jurisdiction" in the dependency context is most often used in connection with the well-known and integral part of the dependency process known as "taking jurisdiction" over a child at the "jurisdictional hearing." (See *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129; see also § 355, subd. (a).) Specifically, the juvenile court "takes jurisdiction over the child" by making a factual finding that the child is described by section 300. (*In re Austin P.*, *supra*, at p. 1129; see §§ 355, subd. (a); 356.) Thus, under its most natural reading in the dependency context, subdivision (a)(2)(A)'s phrase "child who was within the jurisdiction of the juvenile court pursuant to Section 300" (§ 827, subd. (a)(2)(A)) means a child over whom the juvenile court had taken jurisdiction by finding them to be a person described by section 300. In other words, a child as to whom jurisdictional findings (§ 356) had been affirmatively made.

Indeed, references to the "jurisdiction" of the juvenile court often mean the formal, active jurisdiction of the juvenile court during a dependency case. (See §§ 366,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

subd. (a)(1)(D) & (F)(i); 366.1, subds. (g)(1), (h); 391, subd. (b)(5)(B); see also § 391, subd. (d)(2); but see, e.g., § 301, subd. (a).) If the Legislature had intended section 827, subdivision (a)(2)(A) to have the meaning *Elijah S.* ascribes to it, the use of the phrase "within the jurisdiction of the juvenile court" risks confusion in light of the way "jurisdiction" is typically used in the dependency context.

Not only would this risk of confusion have been substantial, it would have been unnecessary. If the Legislature had meant to refer to any child who happened to be described by section 300, regardless of whether they had ever been under the active jurisdiction of a juvenile court, it had a far better phrase to use: a "child described by section 300." Indeed, this and similar phrasing is found throughout the dependency statutes. (See, e.g., §§ 305, subd. (a); 328; 340, subd. (b)(1).)

Additionally, section 827, subdivision (a)(2)(A) itself seems to presuppose that a petition to release records will be tied to a specific juvenile case. The last sentence of the provision reads: "Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing by a preponderance of evidence that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to *the juvenile case that is the subject of the petition*." (§ 827, subd. (a)(2)(A), italics added.) If subdivision (a)(2)(A) encompasses records of deceased children who were never the subject of a dependency case, it is unclear what the phrase "the juvenile case that is the subject of the petition" refers to. Yet, if subdivision (a)(2)(A) refers only to deceased children over whom the juvenile court had taken jurisdiction in a dependency case, the meaning of that phrase is clear.

*Legislative Acquiescence*

Petitioner emphasizes that section 827 has been amended since *Elijah S.* was decided, yet no alterations were made to the wording about a deceased child who was "within the jurisdiction

2.

of the juvenile court." And, indeed, it is clear the Legislature was aware of the *Elijah S.* decision, because legislative analyses for the subsequent amendments reference the case and its holding.

However, the concept of legislative acquiescence has fallen into disfavor because it rests upon faulty assumptions. (See Brown, *Tradition and Insight* (1993) 103 Yale L.J. 177, 199–200.) Courts have concluded that "legislative acquiescence is an exceedingly poor indicator of legislative intent." (*Donajkowski v. Alpena Power Co.* (1999) 460 Mich. 243, 258.) Our Supreme Court has repeatedly observed, including quite recently, that legislative acquiescence arguments "rarely do much to persuade." (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 116; *Scher v. Burke* (2017) 3 Cal.5th 136, 147.)

There are several reasons for this. First and foremost, statutory interpretation centers on the *enacting* legislature's intent. The inaction of a *subsequent* legislature does not speak to that intent.

Moreover, while the subsequent legislature's inaction could be the result of acquiescence in the status quo, it could just as likely be the result of disagreement on how to alter the status quo, indifference to the status quo, or a failure to appreciate or focus on the consequences of not changing the status quo in a bill addressing other issues. Consequently, it is impossible to assert with any degree of assurance that the Legislature's inaction represents its affirmative approval of an appellate court's statutory interpretation. (See *Patterson v. McLean Credit Union* (1989) 491 U.S. 164, 175, fn. 1 (*McLean*) superseded by statute as noted in *CBOCS West, Inc. v. Humphries* (2008) 553 U.S. 442, 450, 454.)

Additionally, even if a majority of legislators had subsequently come to personally approve of a judicial interpretation contrary to the enacting legislature's intent, that approval can only have legal effect upon the passage of a law implementing it. (Cal. Const., art. IV, § 8(b)(1).) Legislative silence is no substitute for a bicameral vote upon the text of a law. (*McLean*, *supra*, 491 U.S. at p. 175, fn 1; see Cal. Const., art. IV, § 8(b)(1); see also *Thompson v. Thompson* (1988) 484 U.S. 174, 191–192 (conc. opn. of Scalia, J.).)

Finally, even if a subsequent legislature's understanding of the legal status quo were pertinent, that conclusion would not inure solely to petitioner's benefit here. Senate Bill No. 39, which enacted the 2007 amendments underlying petitioner's argument, observed that subdivision (a)(2) reflects the Legislature's conclusion "that when *a dependent child* dies within the jurisdiction of the juvenile court, the presumption of confidentiality for juvenile case files evaporates and the requirement of an expedited decision becomes manifest...."[2] (Sen. Bill No. 39, § 1(f), italics added.) (2007–2008 Reg. Sess.) (Senate Bill 39.) Unlike the references to *Elijah S.* which appear solely in legislative history documents, this description of subdivision (a)(2) as addressing dependent children was part of a finding actually enacted by the Legislature in Senate Bill 39.

*Practical Considerations*

When a court determines whether to take jurisdiction (i.e., whether the child is a person described by § 300), it usually does so after a contested evidentiary hearing with well-developed rules of evidence. (§ 355.) Under *Elijah S.*, in order for a court to determine whether a deceased child for whom there were no prior jurisdictional findings qualifies as a "child who was within the jurisdiction of the juvenile court pursuant to

---

[2] A court can make jurisdictional findings and dispositional orders at the same hearing. (§ 358, subd. (a).) In that circumstance, the child can be taken under the jurisdiction of the juvenile court and become a dependent on the same day. This is likely why Senate Bill 39 section 1(f) refers to "a dependent child" while subdivision (a)(2) refers to a child "within the jurisdiction of the juvenile court."

However, it is true that a "dependent child" and a child over whom the court has taken "jurisdiction" are not always synonymous. Because while the juvenile court *can* address disposition at the same time as jurisdictional findings (§ 358, subd. (a)), the disposition hearing can also be continued 10 to 30 days from the jurisdiction hearing. (§ 358, subd. (a)(1)–(3).) In practice, the delays are often longer.

During the gap between jurisdictional findings and dispositional orders, the court has taken jurisdiction over the child, but the child is not yet "a dependent child." Given the very short statutory timeframe that a child would be under the jurisdiction of the court, yet not a dependent of the court, and given that there is no shorthand way to refer to such children, Senate Bill 39's use of the phrase "dependent child" is unsurprising. Moreover, whatever mild friction there is between my reading of subdivision (a)(2) and Senate Bill 39's reference to "dependent child[ren]," it pales in comparison to its incompatibility with *Elijah S.*'s interpretation.

Section 300," (§ 827, subd. (a)(2)(A)), it would often – if not always – be necessary to conduct a factfinding inquiry similar to the one performed at a jurisdictional hearing.

*Legislative Policy*

*Elijah S.* held the Legislature "was interested in opening up to public view the workings of the entire juvenile court and child protective system for the purpose of exposing deficiencies therein, and thereby enabling their correction." (*Elijah S.*, *supra*, 125 Cal.App.4th at p. 1555; see maj. opn at pp. 15–16, *ante*.) The opinion concluded that this legislative purpose "would not be advanced by limiting disclosure of juvenile records to only those generated and maintained by the juvenile court *after* a minor had already been declared a dependent." (*Id.* at p. 1556.)

This type of reasoning, once widely employed, has also been rejected due to its faulty assumptions. " '[N]o legislation pursues its purposes at all costs.' " (*CTS Corp. v. Waldburger* (2014) 573 U.S. 1, 12; *American Exp. Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 234; *Rodriguez v. United States* (1987) 480 U.S. 522, 525–526; *City of Selma v. Fresno County Local Agency Formation Com.* (2016) 1 Cal.App.5th 573, 584; *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48.) Accordingly, courts have roundly rejected the approach of assuming that "*whatever* furthers the statute's primary objective must be the law." (*Cyan, Inc. v. Beaver County Employees Retirement Fund* (2018) ___ U.S. ___ [138 S.Ct. 1061, 1073].) That is because "statutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice." (*N.L.R.B. v. HH3 Trucking, Inc.* (7th Cir. 2014) 755 F.3d 468, 471.) In other words, "the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." (*Rapanos v. United States* (2006) 547 U.S. 715, 752.)

Here, as in many areas of legislative activity, there are various goals being balanced against one another. "Opening up the workings of the child welfare system" is certainly one of those goals, but only to a certain extent. On the other hand, it remains

5.

the case that juvenile court records, in general, should be kept confidential. (§ 827, subd. (b)(1).)

Similarly, Senate Bill 39 itself embodied dual legislative intents that needed to be balanced against one another. With that enactment, the Legislature expressly intended "to maximize public access to juvenile case files in cases where a child fatality occurs as a result of child abuse or neglect … *while also* ensuring that basic privacy protections are consistently afforded." (Sen. Bill 39, § 1(e), italics added.) (2007–2008 Reg. Sess.)

It is not for us to decide how far to pursue public access at the expense of privacy protections. We must avoid the presumption that whatever statutory interpretation furthers public access must be the law, regardless of how it affects privacy interests or other competing policies. Instead, we must adhere to the statutory text itself to identify where the Legislature chose to stop in its pursuit of the statute's "general objectives." (*N.L.R.B. v. HH3 Trucking, Inc.*, *supra*, 755 F.3d at p. 471.) Put simply, the Legislature wrote the statute it wrote – "meaning, a statute going so far and no further." (*Michigan v. Bay Mills Indian Community* (2014) 572 U.S. 782, 794.)

It is important to note that a straightforward reading of section 827, subdivision (a)(2)(A) would not eliminate the ability of journalists to investigate or expose possible lapses or misconduct by social services agencies, foster parents, or others, in connection with the death of children. Section 10850.4 independently requires, without court order, the release of redacted documents concerning children who die under "a reasonable suspicion that the fatality was caused by abuse or neglect." (§ 10850.4, subd. (a).)

Even if section 10850.4 were not enough, section 827, subdivision (a)(2)(A) merely sets forth a *presumption* in favor of release for certain records. (§ 827, subd. (a)(2)(B).) The juvenile court may still release records not covered by section 827, subdivision (a)(2)(A). (§ 827, subd. (a)(1)(Q); Cal. Rules of Court, rule 5.552(d).) While there is no presumption in favor of release for such records, the court may still order

release after it "engage[s] in a careful balancing of … competing interests," including those of the child, parties, *petitioner, and the public*. (*J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1337–1338.)

It seems eminently reasonable to establish a presumption in favor of the release of documents pertaining to children who die while under the active jurisdiction/supervision of a government system designed to protect children. It also seems reasonable to decline to extend that presumption to records regarding other children, while still allowing for their release after a balancing of interests, including those of the petitioner and the public.

While I do not endorse *Elijah S.*'s reading of section 827, subdivision (a)(2)(A), I respectfully concur with the majority as to the issuance of a writ directing the juvenile court to vacate its prior ruling and to hold a hearing.

POOCHIGIAN, J.